**Linda RAMSEY, Plaintiff–Appellant,**

v.

**HERCULES INCORPORATED and Provident Life and Accident Insurance Company, Defendants–Appellees.**

**No. 95–1574.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 11, 1995.

Decided Feb. 29, 1996.

Keith L. Johnson (argued), Terre Haute, IN, for Plaintiff–Appellant.

David W. Sullivan (argued), Cox, Zwerner, Gambill & Sullivan, Terre Haute, IN, for Defendants–Appellees.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The question in this case turns on what exactly Hercules Incorporated promised its employees in the Hercules Income Protection Plan, with respect to the long term disability portion of that plan, and more particularly on how much discretion it conferred on the plan administrator. Linda Ramsey, an employee of Hercules from October 1975 until 1991, challenged the decision of Provident Life and Accident Insurance Company, the plan administrator, to terminate her long term disability benefits as of July 8, 1993. The district court concluded that the Plan gave the administrator discretionary authority to determine participant eligibility, and it thus reviewed Ramsey's claim under the "arbitrary and capricious" standard. From that perspective, the court found that the administrator's action was neither arbitrary, capricious, nor "downright unreasonable," and it granted summary judgment to the defendants. Because we conclude, upon an independent review of the language of this particular Plan, that the administrator did not have the necessary discretion to support this standard of review, we reverse and remand for further proceedings.

## I.

After working for Hercules for more than fifteen years, Ramsey submitted a claim for long term disability benefits under the Plan on June 11, 1991, stating that she had been totally disabled since January 8, 1991. (Between January and June, Ramsey received short term disability benefits, which are not at issue here.) The plan administrator found her eligible for benefits, and she received total disability benefit payments for twenty-four months. During that time period, Provident monitored Ramsey's abilities. As a result of its review, on April 23, 1993, Provident decided that her benefits should cease as of July 8, 1993. Upon Ramsey's request for reconsideration, Provident took another look at the record and decided on July 23, 1993, to reaffirm its earlier decision. Ramsey then brought an action in the district court under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), which permits plan beneficiaries to sue in federal court to recover benefits due to them.

The Plan describes the short term disability benefits and the long term disability plan in separate sections. It explains at the outset that the two types of benefits offer different coverage and have different eligibility requirements. Both the short term benefits and the long term benefits sections address the important question "when benefits end." For short term benefits, the Plan provides that benefits end at the earliest of the following:

* When you refuse to provide information about your disability to the Company or refuse medical examinations by a physician chosen by the Company to determine your fitness for work.
* When you are no longer disabled and you are capable of returning to work *as determined by the Company.*
* When you refuse reasonable ·work at your location.
* When you have been paid all the benefits for which you are eligible.

(Emphasis added). With respect to long term benefits, the Plan states that benefits begin after short term benefits end. In most situations, the Plan continues, "these benefits continue as long as you remain disabled, up to age 65." Thus, logically enough, when disability ends, the right to benefits ends also. In a section entitled "End of Disability," located in the long term disability section of the Plan document, the Plan explains the end-point further:

Your disability is considered to have ended when the earliest of the following occurs:

* You are no longer totally disabled.
* You begin work in a job for which you are reasonably qualified by training, education, or experience.
* You fail to furnish proof of your continuous total disability or refuse to be examined by a doctor assigned by the Company's Claims Administrator.
* You cease to be treated by a licensed physician.

The plan administrator cited the first of these criteria as the reason for terminating Ramsey's benefits.

## II.

■■■ The Supreme Court established the standard by which a plan administrator's decision to deny benefits is to be reviewed in a challenge under ERISA, 29 U.S.C. § 1132(a)(1)(B), in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Analogizing ERISA's provisions to traditional rules of trust law, the Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. Where a plan confers power on the administrator to exercise discretion, the appropriate standard of review is the deferential "arbitrary and capricious" one. *Id.* at 111, 109 S.Ct. at 954. *See also Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375 (7th Cir.1994).

*Firestone* established the basic framework for the standard of review, but as we pointed out in *Petrilli v. Drechsel,* 910 F.2d 1441, 1446–47 (7th Cir.1990), the courts have disagreed about whether *Firestone* requires *de novo* review only of benefit denials based upon an interpretation of a plan or also of benefit denials based upon factual determinations. Both the narrower reading and the broader reading find some support in *Firestone.* Those favoring the narrower reading focus upon the language the Court used to introduce its analysis, which reads "[t]he discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits *based on plan interpretations.*" *Firestone,* 489 U.S. at 108, 109 S.Ct. at 953 (emphasis added). *See Pierre v. Connecticut General Life Insurance Co.,* 932 F.2d 1552, 1561 (5th Cir. 1991) (*de novo* review limited to denials based on plan interpretations), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). Those favoring the broader reading stress the language the Court used to summarize its holding, which refers both to eligibility determinations and to plan interpretation: "we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority *to determine eligibility for benefits* or to construe the terms of the plan." *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957 (emphasis added). *See Reinking v. Philadelphia American Life Insurance Co.,* 910 F.2d 1210, 1214 (4th Cir. 1990) (*de novo* review anytime the administrator is not granted discretion); *Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F.2d 1176, 1183 (3d Cir.

1991) (same, noting its agreement with *Petrilli*). *See also Brown v. Ampco–Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir.1989) (same, but without specific discussion).

Although we described the narrower reading of *Firestone* as "plausible" in *Petrilli*, we strongly suggested that the broader reading is more consistent with the Supreme Court's opinion. 910 F.2d at 1447. We noted, for example, that the Court could have omitted the phrase "to determine eligibility for benefits" emphasized above, if it had intended the narrower reading. We also noted that the Court's rationale, adopted from trust law, focuses upon whether the written plan conferred discretion on the administrator, not on the type of decision—factual or interpretative—that the administrator is making. *Petrilli*, however, did not resolve the issue because it turned only on the interpretation of a plan, not the application of the plan to disputed facts. Today's case, in contrast, squarely raises the question flagged in *Petrilli*: is Ramsey entitled to *de novo* review of the administrator's factual determination about her long term disability.

We begin with the language of § 1132(a)(1)(B) and such guidance as we have from the Supreme Court. Because the statute does not specify a particular standard of review for actions brought under it, we turn to trust law for guidance, in keeping with *Firestone*, 489 U.S. at 110–11, 109 S.Ct. at 954–55, and our earlier decision in *Petrilli*.

▮▮▮ Under general principles of trust law, courts do not alter the standard under which they review a trustee's decision based on the characterization of that decision as interpretive or factual. When a beneficiary asks a court to review the actions or inactions of a trustee, the court normally distinguishes between discretionary and mandatory powers. *Dunkley v. Peoples Bank & Trust Co.*, 728 F.Supp. 547, 556 (W.D.Ark. 1989); *Brummett v. Hewes*, 311 Mass. 142, 40 N.E.2d 251, 252 (1942); *Woodard v. Mordecai*, 234 N.C. 463, 67 S.E.2d 639, 644 (1951). *See also* Restatement (Second) of Trusts § 187; G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 560, at 193–208 (2d rev. ed. 1980); W. Fratcher, *Scott on Trusts* § 187, at 14–51 (4th ed. 1988). While courts will not cabin a trustee's exercise of a discretionary power except to curb an abuse of discretion, they will compel a trustee to execute a mandatory power. *Dunkley*, 728 F.Supp. at 556; *Brummett*, 40 N.E.2d at 252; *Woodard*, 67 S.E.2d at 644. One illustration of this principle occurs when a trustee's power is triggered by the happening of some future event or condition, and a beneficiary tries to compel the trustee to act. G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 560, at 191–193; W. Fratcher, *Scott on Trusts* § 186.1, at 12–13. If, under the trust document, the trustee has the power to decide whether the event has happened or if the condition itself is entirely subjective, courts will defer to the determination of the trustee. *Fleishman v. Blechman*, 306 P.2d 548, 551–52 (Cal.Dist.Ct.App.1957). On the other hand, if the beneficiary without relying upon evidence controlled by the trustee can show that the event has happened or that the condition has been met, courts will force the trustee to exercise the conditional power. G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 560, at 191; W. Fratcher, *Scott on Trusts* § 186.1, at 13.

Ever since the English courts of equity developed the trust instrument, trustees have been answerable to the beneficiaries for a host of factually specific decisions, including reviews of accounts and investment decisions. *Bone v. Hayes*, 154 Cal. 759, 99 P. 172 (1908) (trustee must render an accounting to a court having jurisdiction); *Arnold v. Alden*, 173 Ill. 229, 50 N.E. 704 (1898) (same); W. Fratcher, *Scott on Trusts* § 210, at 281 (discussing liability of trustee for imprudent investments) (citing *Fry v. Tapson*, 28 Ch.D. 268 (1884) and *In re Smith* [1896] 1 Ch. 71); *Villard v. Villard*, 219 N.Y. 482, 114 N.E. 789 (1916) (same). *See, e.g.*, G. Bogert & G. Bogert, *Law of Trusts and Trustees* §§ 541–544, at 157–506; W. Fratcher, *Scott on Trusts* §§ 197–226, at 188–431. It is true, as Professor Langbein points out in an article critical of *Firestone*, that classic trust law assumed that the trustee had discretion unless the trust instrument or some particular doctrine of trust law provided otherwise. John H. Langbein, *The Supreme Court Flunks Trusts*, 1990 Sup.Ct.Rev. 207, 219.

It is also true that the Supreme Court, for purposes of ERISA, has reversed the presumption and concluded that the ERISA plan must specifically confer discretion on a plan administrator. Whichever way the traditional presumption ran, however, it seems plain that there was and is no distinction based on the kind of decision the trustee is making. The important variables include the content of the underlying law, the language of the written instrument, and the fidelity of the trustee to the interests of the beneficiaries.

Noting the close (even if not perfect) link between traditional trust law and the administration of ERISA plans, the *Firestone* Court applied these principles to remedial actions challenging claim denials brought under 29 U.S.C. § 1132(a)(1)(B) and decreed that plan administrator decisions are subject to *de novo* review unless the plan gives the administrator discretion over the matter at issue. (The *Supreme Court expressed no view about the appropriate standard for actions brought under other provisions of ERISA, nor do we.*) Like the Third and the Fourth Circuits, and as our *Petrilli* decision foreshadowed, we find no meaningful distinction between factual determinations and legal interpretations of plan administrators. The key question is whether the administrator has discretion under the plan. This approach is more consistent than the alternative both with the general approach of *Firestone* and with the primary goal of ERISA: to protect the interests of plan members and their beneficiaries. *See also* Comment, *De Novo Review of ERISA Plan Administrators' Factual Determinations*, 71 Wash. U.L.Q. 165 (1993) (approving the Third Circuit's approach).

The Fifth Circuit, in reaching the opposite conclusion in *Pierre*, distinguished the administrator's initial determination of the facts underlying a claim for benefits from its subsequent determination whether those facts constitute a claim to be honored under the terms of the plan. *Pierre*, 932 F.2d at 1557. It concluded that *Firestone* addressed only the second kind of determination. An ERISA administrator, the court reasoned, has inherent discretion to control and manage the plan and to give full and fair review to each claim denial. It thus found that the necessary or appropriate discretion that goes along with day-to-day management "includes passing on issues of fact that determine individual eligibility for benefits." *Id.* at 1558. The court concluded that administrators must always exercise discretion when they ascertain the facts of particular cases and thus those decisions must always be reviewed under a deferential standard. The court found further support for its result in the facial similarity between factual determinations of a plan administrator and findings of fact made by a district court or an administrative agency, noting that the latter are normally reviewed under a clearly erroneous, arbitrary and capricious, or abuse of discretion standard. Finally, the court expressed concern about the difficulty of *de novo* review and the burdensome litigation it would encourage.

Without in any way suggesting that the concerns raised by the Fifth Circuit are trivial, we do not agree with that court's conclusion. The logic of its methodology, in which administrator determinations are bifurcated into subsidiary factual findings and ultimate determinations, would compel the conclusion that factual determinations of administrators are always, and must always be, reviewed under a deferential standard. But, as we noted above, such a conclusion would be fundamentally inconsistent with trust law. In addition, it would be inconsistent with the Supreme Court's rejection in *Firestone* of the argument that the authority to control and manage a plan, and the requirement of a full and fair review of claim denials, automatically entitled the administrator to the deferential standard of review. *Firestone*, 489 U.S. at 113, 109 S.Ct. at 955–56. Indeed, the court's power to require the trustee to justify decisions has for centuries been an important part of the protection enjoyed by trust beneficiaries in Anglo–American law. *See* G. Bogert & G. Bogert, *Law of Trusts and Trustees* §§ 1–3, at 1–22; W. Fratcher, *Scott on Trusts* § 1, at 1–36. Once it is established that *some* factual determinations may be discretionary, and others subject to *de novo* review, the inquiry returns (as it should) to

the particular trust agreement, or in our case to the particular ERISA plan.

The other points made in *Pierre* are similarly unpersuasive. Crucial differences exist between findings of fact made by a private entity such as a plan administrator, and findings made by duly authorized administrative law judges, agencies, or federal district courts. Underlying the deferential review that fact findings of the latter bodies enjoy is a well established set of procedural protections that stem from the Constitution and individual statutes. Plan administrators, in contrast, neither enjoy the acknowledged expertise that justifies deferential review for agency cases, see *Luby*, 944 F.2d at 1183, nor are they unbiased fact finders like the courts. Indeed, when the initial decision in an agency lacks the crucial procedural safeguards, the Administrative Procedure Act requires the federal courts to review both fact and law *de novo*. 5 U.S.C. § 706(2)(F). *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Finally, looking at ERISA as a whole, the fear of a flood of litigation is misplaced. Employers draft the plans, and as long as they follow ERISA's dictates, they can amend them. *See Curtiss–Wright Corp. v. Schoonejongen*, —— U.S. ——, ——, 115 S.Ct. 1223, 1227, 131 L.Ed.2d 94 (1995). Employers that wish to give their employees the additional assurance that full review in a district court entails can write, and re-write, their pension plans to avoid conferring discretion on their plan administrators. Those concerned about excessive layers of review, or burdensome litigation, can write, and re-write, their plans to give discretion to their plan administrators.

### III.

■ Consistent with the Supreme Court's decision in *Firestone*, this Court's earlier approach in *Petrilli*, and the Third Circuit's decision in *Luby*, therefore, the first inquiry here is whether the Hercules Plan conferred discretion on the plan administrator with respect to long term disability benefits. In making that determination, we review the language of the Plan *de novo*, just as we would review the language of any contract.

*Bechtold v. Physicians Health Plan of Northern Indiana*, 19 F.3d 322, 325 (7th Cir.1994).

■ The difference in the language of the Hercules Plan Summary that governs short term disability and the language that governs long term disability is instructive in this regard. With respect to short term disability, the plan confers discretion upon the administrator. Short term benefits end when the employee is no longer disabled and is capable of returning to work "as determined by the Company." This crucial language does not appear in the section dealing with long term disability. In contrast, that section sets forth four objective circumstances and states that disability ends when the earliest of those occurs. The first of those four circumstances is the one applicable here: "You are no longer totally disabled." It does not have any clause giving the administrator discretion to decide what amounts to total disability. As the second clause indicates, total disability ends when the person begins work in *any* job for which he or she is reasonably qualified; it does not require the ability to return to the precise position with Hercules held before, again in contrast to the short term disability rules. The Plan thus treats total disability as a condition that can be assessed objectively, and it does not give the administrator leeway to change the meaning of the term from case to case. This plan is therefore quite different from the plans construed in *Donato, supra*, 19 F.3d at 379 (plan would pay long term disability benefits " 'upon receipt of proof' " but " '[a]ll proof must be satisfactory to us' ") and *Fuller v. CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir.1990) (plan "empower[ed] trustees 'to construe and interpret the plan' "). Given the absence of discretionary authority, *Firestone* requires the district court to undertake a *de novo* review of the administrator's decision.

■ In order to avoid this result, Hercules points to two additional sections of the Plan. The first relates to the procedure that governs denied claims. After describing the appeal process and indicating that the Named Fiduciary must make decisions within a specified time, it states: "Any action or

determination by the Named Fiduciary in this review procedure shall be final, conclusive, and binding on Hercules, on Plan participants, and on beneficiaries." The second appears in the general Plan Administration Information section and relates to plan continuation. Hercules states there that "[i]t is the intention that the Plan be continued indefinitely; however, Hercules reserves the right to modify, suspend, or end this Plan at any time."

Neither of these provisions has the effect of making a plan administrator's decisions discretionary with respect to long term disability benefits. As an initial matter, we note that if they did, it would have been unnecessary to insert the phrase "as determined by the Company" in the short term disability section. More importantly, neither of the clauses upon which Hercules relies addresses the question of administrator discretion. The first addresses finality of decisions, which is quite distinct from the issue whether the Plan confers a zone of discretion on the administrator with respect to the content and standards for decision making. Clear internal finality rules facilitate efficient administration of plans, and they let parties know when the time to approach the courts has arrived, assuming that the internal review process has not resolved all issues. The second clause is a routine one that makes it clear that Hercules has made no promises never to amend the plan itself. But, as we noted in *Heath v. Varity Corp.*, 71 F.3d 256, 258 (7th Cir.1995), general plan amendments are different from decisions applying a particular plan to a particular employee. Ramsey here seeks the benefit of the plan that applied to her, and nothing in her claim implicates the Plan Continuation clause.

### IV.

Because the district court should have reviewed Ramsey's claims with respect to her entitlement to long term disability benefits under the Hercules Plan *de novo*, we RE-VERSE and REMAND for further proceedings consistent with this opinion.