**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 21, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-51065

_____

COSERV LIMITED LIABILITY CORPORATION;
MULTITECHNOLOGY SERVICES LP,

                                        Plaintiffs-Appellants,

                        versus

SOUTHWESTERN BELL TELEPHONE COMPANY;
PUBLIC UTILITY COMMISSION OF TEXAS;
REBECCA KLEIN; PAUL HUDSON; JULIE PARSLEY,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

     In this case of first impression in this Circuit we interpret the compulsory arbitration provision of the Telecommunications Act of 1996 ("Telecom Act" or "Act") set forth at 47 U.S.C. § 252(b)(1). We hold that only issues voluntarily negotiated by the parties pursuant to § 252(a) are subject to the compulsory arbitration provision. In so holding, we affirm on alternative grounds the district court's grant of summary judgment.

Southwestern Bell Telephone Company ("SWBT") and Coserv Limited Liability Corporation ("Coserv") are local exchange carriers subject to the Telecom Act. SWBT is an incumbent local exchange carrier (ILEC) that provides telecommunications services and operates telecommunications equipment throughout Texas. Coserv is a competitive local exchange carrier (CLEC) that provides telecommunications services and operates telecommunications facilities located at approximately fifty-eight apartment complexes in Texas. At each of the apartment complexes, Coserv's facilities include telecommunications equipment in a central telephone equipment room as well as equipment and wires running to multiple buildings and individual apartments. In order to allow tenants to select telephone service from other telecommunications providers, Coserv allows other providers to bring a network connection to a single point in the central telephone equipment room. Coserv typically charges these other providers a one-time connection fee and a monthly service fee for the connection and use of its facilities. Coserv terms this practice "compensated access".

The obligations of SWBT, Coserv, and all other local exchange carriers, both incumbents as well as competitors, are listed in Section 251(b) of the Act. These obligations relate to: resale of telecommunications services; number portability; dialing parity;

access to right-of-ways; and reciprocal compensation.[1] In addition, § 251(c) places six specific duties on ILECs, which relate to: the duty to negotiate; interconnection; unbundled access; resale; notice of changes; and collocation.[2] An ILEC's § 251(c)(1) duty to negotiate is limited in scope to "the particular terms and conditions of agreements to fulfill the duties described in [§ 251(b) and (c)]."[3]

In § 252, the Act specifies the procedures for an ILEC to fulfill its duty to negotiate. Upon receiving a request for an agreement pursuant to the duties listed in § 251, an agreement can be reached through voluntary negotiations or through compulsory arbitration.[4] Under the provision for voluntary negotiations, the parties are free to reach any agreement, without regard to the duties set forth in § 251.[5] However, any voluntary agreement must

---

[1] 47 U.S.C. § 251(b).

[2] 47 U.S.C. § 251(c).

[3] 47 U.S.C. § 251(c)(1). The section reads in its entirety:

> The duty to negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of agreements to fulfill the duties described in paragraphs (1) through (5) of subsection (b) of this section and this subsection. The requesting telecommunications carrier also has the duty to negotiate in good faith the terms and conditions of such agreements.

[4] 47 U.S.C. § 252(a) & (b).

[5] 47 U.S.C. § 252(a)(1), "Voluntary negotiations," reads in part:

3

be submitted to the state commission for approval.[6]  The compulsory

arbitration clause provides that:

> During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate <u>any open issues</u>.[7]

The meaning of the phrase, "any open issues" is the subject of this

appeal.

Once a petition for arbitration has been accepted by the state

commission, the state commission "shall resolve each issue set

forth in the petition ... by imposing appropriate conditions as

required to implement subsection (c) of this section."[8]  In

resolving any open issues, the state commission shall ensure that

the requirements of § 251 are met.[9]

## II

---

> Upon receiving a request for interconnection, services, or network elements pursuant to section 251 of this title, an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 of this title.

[6] 47 U.S.C. § 252(a)(1).

[7] 47 U.S.C. § 252(b) (emphasis added).

[8] 47 U.S.C. § 252(b)(4)(C).

[9] 47 U.S.C. § 252(c)(1).

4

Coserv requested an interconnection agreement governing SWBT's duties under § 251. The parties proceeded with voluntary negotiations pursuant to § 252. Coserv sought to add to the negotiations its proposed rates, terms, and conditions for compensated access. SWBT refused to negotiate issues relating to compensated access. Voluntary negotiations over SWBT's § 251 duties continued but did not result in an interconnection agreement.

Coserv filed a petition for arbitration with the Public Utility Commission ("PUC"), pursuant to § 252. Coserv identified several issues that it claimed remained open between the parties, including issues relating to compensated access. SWBT argued that the PUC lacked jurisdiction to arbitrate issues relating to compensated access and the PUC ultimately agreed. The PUC read § 252's "any open issues" clause narrowly, concluding that:

> § 251(c) limits the scope of interconnection agreements arbitrated pursuant to FTA § 252 to those duties described in "paragraphs (1) through (5) of subsection (b) and this subsection." ... By the clear terms of § 251(c), the parties' good faith duties to negotiate in accordance with § 252 are restricted to those duties described in (1)-(5) of (b), which apply to all LECs, and (c), which applies to ILECs exclusively.

The PUC entered an arbitration award setting forth an interconnection agreement governing SWBT's duties to Coserv under § 251 and refusing to consider the compensated access issues based on lack of jurisdiction. Coserv brought an action in federal

5

district court challenging the PUC's jurisdictional finding. The district court agreed with the PUC and granted summary judgment accordingly. Coserv appeals the judgment of the district court.

III

We review the grant of summary judgment de novo, applying the same standard as the district court.[10] A district court reviews the compliance of an interconnection agreement with federal law and related matters of statutory interpretation de novo.[11]

We begin, as we always do in matters of statutory interpretation, with the plain language and structure of the statute.[12] Section 251 provides that an ILEC has:

> [t]he duty to negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of agreements to fulfill the duties described in paragraphs (1) through (5) of subsection (b) of this section and this subsection.[13]

Section 252 provides in relevant part:

> (a) Agreements arrived at through negotiation
> (1) Voluntary negotiations
> Upon receiving a request for interconnection, services or network elements pursuant to section 251 of

---

[10]Wyatt v. Hunt Plywood Co., 297 F.3d 405, 408 (5th Cir.2002).

[11]Southwestern Bell Telephone Co. v. Public Utility Commission of Texas, 208 F.3d 475, 482 (5th Cir. 2000); U.S. West Communications v. MFS Intelenet, 193 F.3d 1112, 1117 (9th Cir. 1999).

[12]See Society of Lloyd's v. Turner, 303 F.3d 325, 330 (5th Cir. 2002).

[13] 47 U.S.C. § 251(c)(1).

6

this title, an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier or carriers without regard to the standards set forth in subsections (b) and (c) of section 251 of this title....

(b) Agreements arrived at through compulsory arbitration
(1) Arbitration
During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate <u>any open issues</u>.[14]

Thus, compulsory arbitration under § 252 begins with a request by a CLEC to negotiate with an ILEC regarding its obligations under § 251. An ILEC is <u>required</u> by the Act to negotiate about those duties listed in § 251(b) and (c). During negotiations, however, the parties are free to make any agreement they want without regard to the requirements of § 251(b) and (c). To that extent, the parties are free to include interconnection issues that are not listed in § 251(b) and (c) in their negotiations. If the voluntary negotiations result in only a partial agreement, or in no agreement at all, either party can petition for compulsory arbitration of any open issue.

---

[14] 47 U.S.C. §§ 252(a)(1); (b)(1) (emphasis added).

There is nothing in § 252(b)(1) limiting open issues only to those listed in § 251(b) and (c). By including an open-ended voluntary negotiations provision in § 252(a)(1), Congress clearly contemplated that the sophisticated telecommunications carriers subject to the Act might choose to include other issues in their voluntary negotiations, and to link issues of reciprocal interconnection together under the § 252 framework. In combining these voluntary negotiations with a compulsory arbitration provision in § 252(b)(1), Congress knew that these non-§ 251 issues might be subject to compulsory arbitration if negotiations fail. That is, Congress contemplated that voluntary negotiations might include issues other than those listed in § 251(b) and (c) and still provided that <u>any</u> <u>issue</u> left open after unsuccessful negotiation would be subject to arbitration by the PUC.

We hold, therefore, that where the parties have voluntarily included in negotiations issues other than those duties required of an ILEC by § 251(b) and (c), those issues are subject to compulsory arbitration under § 252(b)(1). The jurisdiction of the PUC as arbitrator is not limited by the terms of § 251(b) and (c); instead, it is limited by the actions of the parties in conducting voluntary negotiations. It may arbitrate only issues that were the subject of the voluntary negotiations. The party petitioning for arbitration may not use the compulsory arbitration provision to obtain arbitration of issues that were not the subject of negotiations. This interpretation comports with the views of the

other courts that have reviewed this provision in similar contexts.[15] It also comports with the structure of the Act and our recognition of the flexibility accorded state PUCs by the Act.[16]

In reaching this conclusion, we do not eliminate the limits § 251 places on an ILEC's duty to negotiate nor do we create any new obligations under the Telecom Act. An ILEC is clearly free to refuse to negotiate any issues other than those it has a duty to negotiate under the Act when a CLEC requests negotiation pursuant to §§ 251 and 252. Indeed, in this case SWBT refused to negotiate the compensated access issues -- such that these issues potentially become subject to the appropriate state remedies.

While the PUC erred in its interpretation of the compulsory arbitration provision, its ultimate refusal to arbitrate the compensated access issue was correct, because compensated access was not a mutually agreed upon subject of voluntary negotiation between SWBT and Coserv. As we find this a sufficient basis for the PUC's denial of jurisdiction, we do not reach the alternative

---

[15] See US West Communications, Inc. v. Minnesota Public Utilities Commission, 55 F. Supp. 2d 968 (D. Minn. 1999) (holding that "open issues" are limited to those that were the subject of voluntary negotiations). See also MCI Telecommunications Corp. v. BellSouth Telecommunications, Inc., 298 F.3d 1269 (11th Cir. 2002) (rejecting a district court's conclusion that the compulsory arbitration provision was so broad as to include any issue raised by the petitioning party).

[16] See Southwestern Bell Telephone Co. v. Waller Creek Communications, 221 F.3d 812, 816 (5th Cir. 2000) (courts review a state PUC's Telecom Act interpretations de novo, but resolution of all other issues under the arbitrary and capricious standard); 47 U.S.C. §§ 251(d)(3), 251(e)(3), and 261(c).

grounds offered by the PUC or other issues raised by the parties in this case.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.