# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 16-30984

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2017

Lyle W. Cayce
Clerk

————

STEMCOR USA INCORPORATED,

Plaintiff

v.

CIA SIDERURGICA DO PARA COSIPAR, ET AL.,

Defendants

-----------------------------------------------

DAEWOO INTERNATIONAL CORPORATION,

Plaintiff - Appellant

v.

THYSSENKRUPP MANNEX GMBH,

Intervenor Plaintiff - Appellee

v.

AMERICA METALS TRADING L.L.P., ET AL.,

Defendants

————

Appeal from the United States District Court
for the Eastern District of Louisiana

————

No. 16-30984

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

This case is a dispute between two creditors, each of which attached the same pig iron owned by America Metals Trading L.L.P. ("AMT"). Plaintiff-Appellant Daewoo International Corp. ("Daewoo") sued AMT in the Eastern District of Louisiana, seeking an order compelling AMT to arbitrate and an attachment of the pig iron. Daewoo invoked both maritime attachment and the Louisiana non-resident attachment statute, which allows attachments in aid of any "action for a money judgment." La. Code Civ. Proc. art. 3542. Citing both types of attachment, the district court granted Daewoo its attachment. Following Daewoo's attachment, Intervenor-Appellee Thyssenkrupp Mannex GMBH ("TKM") attached the same pig iron in Louisiana state court. TKM then intervened in the federal suit, arguing that Daewoo's attachment should be vacated because (1) maritime jurisdiction was improper and (2) Louisiana non-resident attachment was inapplicable.

The district court agreed with TKM and vacated Daewoo's attachment. Specifically, the district court found that because Daewoo's underlying suit sought to compel arbitration, it was not an "action for a money judgment" and therefore Daewoo could not receive a non-resident attachment writ. Daewoo appeals only the district court's conclusion that its Louisiana non-resident attachment writ was invalid. We VACATE and REMAND.

I

Daewoo is a South Korean trading company. In May 2012, Daewoo entered into a series of contracts with AMT for the purchase of pig iron, to be delivered in New Orleans. The sale contracts contained arbitration clauses. Although Daewoo made payments under the contracts, AMT never shipped the pig iron. TKM is a German company. Between June 2010 and February 2011,

## No. 16-30984

TKM entered into six contracts to purchase pig iron from AMT.  AMT never delivered.  In response to the breach of contract, TKM and AMT negotiated a settlement, which required AMT to make quarterly payments to TKM.  AMT did not pay.

On December 14, 2012, Daewoo filed suit in the Eastern District of Louisiana, seeking attachment of AMT's pig iron on board the M/V Clipper Kasashio, and asserting maritime jurisdiction.  The district court issued the attachment.  On December 21, Daewoo amended its complaint to seek a writ of attachment under the Louisiana non-resident attachment statute.  The writ was granted.  On December 22, the U.S. Marshals Service served Daewoo's writ on the cargo, which was then anchored in Kenner Bend.

On December 28, 2012, TKM filed suit in Jefferson Parish state court seeking a writ of attachment over the same pig iron that Daewoo attached on December 22.  TKM's state court writ of attachment was served on the cargo on December 29, 2012.  TKM then moved to intervene in Daewoo's federal suit. TKM sought a federal writ of attachment over the pig iron, which was granted and served on the cargo on January 11.

That same day, all of the parties moved in federal court to sell the pig iron. The court approved the sale.  The parties agreed that the proceeds of the sale would serve as substitute res, subject to TKM's jurisdictional attack on the federal attachments.

On May 9, 2016, TKM moved to vacate Daewoo's attachment.[1]  The district court agreed with TKM and vacated Daewoo's writ on August 4, 2016. With Daewoo's federal writ vacated, the first valid remaining writ was TKM's state court writ.  Accordingly, the district court ordered that the proceeds from

---

[1] TKM successfully moved to vacate a number of parties' attachments.  Only Daewoo appealed.

3

No. 16-30984

the pig-iron sale be transferred to the Jefferson Parish state court.  On August 10, Daewoo moved to stay the district court's order, arguing that "[i]n the event that Daewoo's appeal is successful it would be difficult to retrieve the funds from the state court, assuming the state court has not already dispersed the funds, and would create serious issues of federal-state comity."  The district court denied the stay request because it was filed after the district court had sent the money to the Jefferson Parish state court.

## II

The district court found federal subject matter jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  We agree.

For a federal court to have jurisdiction under the Convention two requirements must be met: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement.  These requirements flow from the text of two sections of the Convention.  The explicit jurisdictional provision is Section 203, which gives federal courts jurisdiction over all "action[s] or proceeding[s] falling under the Convention."  9 U.S.C. § 203.  "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.  Accordingly, the first step for determining jurisdiction is deciding whether the "arbitration agreement or award . . . falls under the Convention."  *Id.*

The next step, derived from Section 203, is to ask whether the "action or proceeding"—as opposed to the arbitration agreement or award—falls under the Convention.  The Convention's removal statute offers guidance on what "falling under" means because "[g]enerally, the removal jurisdiction of the

4

federal district courts extends to cases over which they have original jurisdiction." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272 (5th Cir. 2002). Section 205 of the Convention allows for removal whenever "the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. We have read "relates to" to mean "has some connection, has some relation, [or] has some reference" to. *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 378–79 (5th Cir. 2006). And reading "falling under" to mean "relates to" makes sense grammatically. "Fall" means "to come within the limits, scope, or jurisdiction of something." Merriam-Webster's Collegiate Dictionary 418 (10th ed. 2002). Accordingly, the second step of the jurisdictional question is asking whether the "action or proceeding" "relates to" a covered arbitration agreement or award. *See Fred Parks, Inc. v. Total Compagnie*, 981 F.2d 1255, 1992 WL 386999, at *1–2 (5th Cir. 1992) (unpublished) (treating the question of original and removal jurisdiction under the Convention as identical).

This two-step jurisdictional inquiry is consistent with case law interpreting the Convention. *See, e.g.*, *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 487 & n.4 (5th Cir. 2012) (finding jurisdiction where there was a covered arbitration agreement and the suit sought appointment of arbitrators); *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) (holding that jurisdiction over preliminary injunction in aid of covered arbitration was proper because the remedy sought did not try to "bypass arbitration"); *Sunkyong Eng'g & Const. Co. v. Born, Inc.*, 149 F.3d 1174, 1998 WL 413537, at *5 (5th Cir. 1998) (unpublished) ("The FAA grants the United States district courts original federal question jurisdiction over arbitral awards and agreements to arbitrate that fall within the Convention."); *Venconsul N.V. v. Tim Int'l. N.V.*, 03Civ.5387(LTS)(MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) ("*Borden* has been interpreted as recognizing a court's power to

entertain requests for provisional remedies in aid of arbitration even where the request for remedies does not accompany a motion to compel arbitration or to confirm an award.").

Both jurisdictional requirements are met here. First, Daewoo's arbitration agreements with AMT are covered by the Convention. For an arbitration agreement to be covered by the Convention, four requirements must be met: (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen. *See Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 339 (5th Cir. 2004); *Sunkyong*, 149 F.3d 1174, 1998 WL 413537, at \*5; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144–45 (5th Cir. 1985). All four requirements are met here:

- There is an agreement in writing to arbitrate Daewoo and AMT's dispute.
- That agreement provides for arbitration in New York, and the United States is a signatory to the Convention.
- The agreement arises out of a commercial relationship between Daewoo and AMT.
- Both Daewoo and AMT are not American citizens.

Second, this suit is related to the AMT arbitration agreements because Daewoo seeks an attachment to facilitate the arbitration provided for in the AMT agreements. *See Borden*, 919 F.2d at 826 ("[T]he desire for speedy decisions in arbitration is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." (internal quotation marks and citation omitted)). Our decision in *E.A.S.T., Inc. of Stamford v. M/V Alaia*, 876 F.2d 1168 (5th Cir. 1989), strongly counsels towards recognizing subject matter jurisdiction

based on the Convention to issue provisional remedies in aid of arbitration.[2] The court in *E.A.S.T.*, albeit in the context of a maritime attachment, found that the "the arrest of a vessel prior to arbitration is not inconsistent with the Convention." *Id.* at 1173. And the court noted that the Convention "does not expressly forbid pre-arbitration attachment" and that pre-arbitration attachment "may 'serve[] . . . as a security device in aid of arbitration.'" *Id.* (alteration in original) (quoting *Atlas Chartering Servs., Inc. v. World Trade Grp., Inc.*, 453 F. Supp. 861, 863 (S.D.N.Y. 1978)).

Indeed, *E.A.S.T.*'s reasoning mirrors the reasoning of courts that have found subject matter jurisdiction under the Convention to order state-law provisional remedies. Like the court in *E.A.S.T.*, those courts reason that "nothing in the Convention divests federal courts of jurisdiction to issue

---

[2] At one point at least, there was significant contrary authority on this issue. *See, e.g.*, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) ("Because the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite*, it would have been inappropriate for the district court to grant preliminary injunctive relief."); *I.T.A.D. Assocs., Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir. 1981) ("[T]he attachment obtained by I.T.A.D. and the superseding bond posted by Podar are contrary to the parties' agreement to arbitrate and the Convention[.]"); *McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1038 (3d Cir. 1974) (finding that the Convention does not allow a court to issue provisional remedies). However, it appears that the courts that read jurisdiction under the Convention restrictively have retreated from their views and now, at least in most circumstances, recognize subject matter jurisdiction to grant provisional remedies in aid of arbitration. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 377 n.19 (4th Cir. 2012) ("Because the Supreme Court has rejected the *McCreary* premise, *Podar Bros.* has been effectively overruled by the Court on the jurisdictional point and is not controlling precedent with respect to [the] injunction request [in aid of arbitration]."); *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010) ("In contrast to *Simula*, [plaintiff] seeks an injunction to preserve the status quo until the arbitral panel can consider and rule upon Toyo's application for interim relief pending the arbitration panel's final decision. Allowing a district court to grant this type of relief is not contrary to the 'emphatic federal policy in favor of arbitral dispute resolution' of primary concern in *Simula*. To the contrary, in cases such as this, judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process." (internal citation omitted)); *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 55 (3d Cir. 1983) (allowing district court to maintain jurisdiction pending arbitration).

provisional remedies . . . such as an attachment, when appropriate in international arbitrations." *Bahrain Telecomms. Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 181 (D. Conn. 2007); *see also China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Dig., Inc.*, 155 F. Supp. 2d 1174, 1180 (C.D. Cal. 2001) ("Rather than conflicting with the parties' agreement to arbitrate, provisional remedies such as attachment reinforce arbitration agreements by ensuring that assets from which an arbitration award would be satisfied are secured while arbitration is pending."). *E.A.S.T.* therefore strongly suggests that this court recognizes jurisdiction under the Convention to issue state-law preliminary remedies in aid of arbitration.[3]

Applying *E.A.S.T.* and the cases that follow it, the Convention grants jurisdiction over Daewoo's request for an attachment. Like the plaintiff in

---

[3] And there are compelling reasons against reading jurisdiction under Section 203 as narrowly limited to the three remedies expressly allowed by the Convention (compelling arbitration and appointing arbitrators in Section 206 and confirming awards in Section 207). Namely,

> [n]othing in § 206 or § 207 limits the subject matter jurisdiction of federal courts. These sections merely identify the remedies that federal courts may grant, and do not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. . . . To grant the remedies provided in those sections, the Court must first determine that it has jurisdiction . . . .

> Treating §§ 206 and 207 as jurisdictional provisions confuses the subject matter jurisdiction of federal courts with their remedial authority. Although jurisdiction is a word of many . . . meanings, there is a difference between the two. The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy . . . . The breadth or narrowness of the relief which may be granted under federal law . . . is a distinct question from whether the court has jurisdiction over the parties and the subject matter. Any error in granting or designing relief does not go to the jurisdiction of the court.

*CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 374–75 (S.D.N.Y. 2014) (internal quotations marks, citations, and alterations omitted). Simply put, the question of what remedies are available in a Convention suit is distinct from the question of jurisdiction.

No. 16-30984

*E.A.S.T.*, Daewoo sought to attach the pig iron in order to facilitate arbitration and increase its chance of recovering on any award. Because Daewoo sought attachment to bring about a covered arbitration—that is, because Daewoo's suit related to a covered arbitration agreement—this court has subject matter jurisdiction.[4]

## III

The parties dispute whether Louisiana's non-resident attachment statute allows for attachment in aid of arbitration. The district court held that it does not. With great respect for the district court, and cognizant of the lack of instructional case law and limited briefing on this issue below, we decline to adopt a categorical approach to this question. Louisiana's non-resident attachment statute allows for attachment in aid of suits to confirm monetary arbitration awards. Moreover, because Louisiana law allows for attachment in aid of yet-to-be-brought actions, non-resident attachment may be available in aid of arbitration when an eventual confirmation suit is contemplated.

As always, statutory interpretation begins with "the plain language and structure of the statute." *Coserv Ltd. Liab. Corp. v. Sw. Bell Tel. Co.*, 350 F.3d 482, 486 (5th Cir. 2003); *see also Arabie v. CITGO Petroleum Corp.*, 89 So. 3d 307, 312 (La. 2012) ("[A]ccording to the general rules of statutory interpretation, our interpretation of any statutory provision begins with the language of the statute itself."). Louisiana's attachment statute provides that "[a] writ of attachment may be obtained in any action for a money judgment, whether against a resident or a nonresident, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain

---

[4] We asked the parties to brief whether this court has personal jurisdiction under quasi in rem principles. We are satisfied that we have personal jurisdiction. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88–89 (1992); *Nassau Realty Co., Inc. v. Brown*, 332 So. 2d 206, 210 (La. 1976).

amount, and whether it is liquidated or unliquidated." La. Code Civ. Proc. art. 3542. A "money judgment" is a "[a] judgment for damages subject to immediate execution, as distinguished from equitable or injunctive relief." Black's Law Dictionary 972 (10th ed. 2014). Accordingly, an "action for a money judgment" is a civil or criminal judicial proceeding seeking monetary damages.

Louisiana case law supports this interpretation. In *de Lavergne v. de Lavergne*, 244 So. 2d 698 (La. App. 4th Cir. 1971), a Louisiana court of appeals was asked to decide whether a suit for alimony was an "action for a money judgment" within the meaning of Article 3542. The court concluded that it was, reasoning:

> A proceeding for alimony is a suit for judgment ordering the payment of money just as any other suit which has for its object the recovery of money in damages or in enforcement of any obligation to pay a sum of money whether liquidated or not. The difference is that in a judgment ordering the payment of a sum of money as alimony or for child support in addition to the ordinary remedies available to the judgment creditor for execution, there is the additional remedy of a contempt proceeding and the imposition of a penalty for noncompliance with the court's order. We must reject the argument of appellants that the additional remedy makes the action something other than one for a money judgment.

*Id.* at 704. The *de Lavergne* court's analysis aligns with the plain meaning of Article 3542. That is, the *de Lavergne* court first asked whether a suit for alimony sought an order compelling the payment of money. *Id.* Noting, however, that an alimony suit allowed for more than just a payment of money—because an alimony proceeding allowed "the additional remedy of a contempt proceeding and the imposition of a penalty for noncompliance with the court's order"—the court asked whether the additional remedy converted alimony into "something other" than an action "for a money judgment." *Id.*

No. 16-30984

The court concluded that it did not because the additional contempt remedy was intended to make the money judgment more effective. *Id.*

And other sections of Louisiana law that refer to money judgments have similarly been interpreted to refer to judicial proceedings seeking judgments of money damages. *See Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 233 n.4 (5th Cir. 2001) ("[A]s a matter of statutory interpretation, in determining the meaning of a particular statutory provision, it is helpful to consider the interpretation of other statutory provisions that employ the same or similar language."). For example, Civil Code Article 3501 sets forth the prescriptive period for "money judgments": "A money judgment rendered by a trial court of this state is prescribed by the lapse of ten years . . . ." Courts interpreting Article 3501 have found that orders for "the payment of a sum of money" are money judgments, *see, e.g.*, *Eikert v. Beebe*, 188 So. 3d 1129, 1131 (La. App. 2d Cir. 2016), but that orders directing a party to take an action are not money judgments, *see, e.g.*, *Liquidator of Clinton & P.H.R. Co. v. Whitaker*, 22 La. Ann. 209, 209 (1870) ("The judgment directs the liquidator to discharge a duty attached to his office. It is not a money judgment."); *Williams v. Perry*, 436 So. 2d 1268, 1269 (La. App. 1st Cir. 1983) (judgment of partition is not a money judgment). Courts interpreting Code of Civil Procedure Article 2291 have similarly defined "money judgment." Article 2291 provides "[a] judgment for the payment of money may be executed by a writ of fieri facias directing the seizure and sale of property of the judgment debtor." The Article has been interpreted to distinguish between orders for the payment of money and orders directing a party to take an action. *See, e.g.*, *Madere v. Madere*, 660 So. 2d 1205, 1205 (La. 1995) (order of partition "did not create" a money judgment); *Lindy Invs., III, L.P. v. Shakertown Corp.*, 631 F. Supp. 2d 815, 821 & n.13 (E.D. La. 2008) (suit seeking declaration that condition precedent for payment was met was not a suit for money judgment).

11

No. 16-30984

Based on this definition of "action for a money judgment," we agree with the district court that a suit to compel arbitration (like this suit) is not directly an action for a money judgment. A motion to compel arbitration seeks an order requiring a party to take an action—namely, to arbitrate the dispute. Accordingly, a suit seeking to compel arbitration is not an "action for a money judgment," and Daewoo's suit seeking to compel arbitration cannot underlie a Louisiana non-resident attachment writ.

However, that Daewoo's action does not directly seek a money judgment does not end the inquiry. Louisiana law provides that, in limited circumstances, an attachment may issue before the suit underlying the attachment is filed. Article 3502 of the Louisiana Code of Civil Procedure provides:

> A writ of attachment . . . may issue before the petition[5] is filed, if the plaintiff obtains leave of court and furnishes the affidavit and security provided in Article 3501. In such a case the petition shall be filed on the first judicial day after the issuance of the writ of attachment . . . unless for good cause shown the court grants a longer delay.

Article 3502 allows for the possibility of attachments in suits like this one. In Louisiana, arbitral awards are convertible into money judgments in confirmation proceedings. *See, e.g.*, *Matherne v. TWH Holdings, L.L.C.*, 136 So. 3d 854, 860 (La. App. 1st Cir. 2013) ("A confirmed arbitration award is considered to be a valid and final judgment for purposes of res judicata."); La. Stat. § 9:4212 ("Upon the granting of an order confirming, modifying, or correcting an award, judgment may be entered in conformity therewith in the court wherein the order was granted."); La. Stat. § 9:4214 (noting that when

---

[5] A petition is equivalent to a complaint under federal law. *See* La. Code Civ. Proc. art. 891.

an award is converted to a judgment, "[t]he judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action, and it may be enforced as if it had been rendered in an action in the court in which it is entered"). Thus, as TKM's counsel conceded, an action to confirm a money award is an action for a money judgment. And because a confirmation suit can be an action for a money judgment, Section 3502 allows for attachments to be issued before the contemplated underlying confirmation suit is brought.[6]

Put into context, Section 3502 allows for attachments to issue in aid of arbitration so long as the party seeking the attachment (1) complies with the requirements of Section 3502 and (2) shows good cause for a pre-petition attachment, which will usually require showing that arbitration is likely to result in a confirmation suit and also showing a need for an immediate attachment (which may include an inquiry into the imminence of the arbitration or confirmation suit).

Thus, the critical question is not whether Daewoo's suit to compel arbitration is an action for a money judgment (it is not); instead, we must

---

[6] Reading Louisiana law to allow for pre-suit attachment in aid of arbitration makes sense of the statutory scheme as a whole because other provisions of Louisiana law assume that some state-law preliminary remedies are available to aid arbitration. Louisiana has adopted the UNCITRAL Model Law on interim measures in arbitration, which provides, "[i]t is not incompatible with an arbitration agreement for a party to request, before or during arbitral proceedings, from a court an interim measure of protection and for a court to grant the measure." La. Stat. § 9:4249. Moreover, the UNCITRAL Model Law indicates that attachment is one of the interim remedies that may aid an arbitration. It would be strange for Louisiana to have adopted the UNCITRAL Model Law without allowing for state law interim remedies in aid of arbitration. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 121 (2000) ("In determining whether Congress has specifically addressed the question at issue, the court should not confine itself to examining a particular statutory provision in isolation. Rather, it must place the provision in context, interpreting the statute to create a symmetrical and coherent regulatory scheme."); *Green v. La. Underwriters Ins. Co.*, 571 So. 2d 610, 616 (La. 1990) ("If two statutes can be reconciled by a fair and reasonable interpretation, we must read the statutes so as to give effect to each.").

further ask (1) whether Daewoo followed the requirements of Section 3502 to seek an attachment in aid of its yet to be filed confirmation suit and (2) whether Daewoo's confirmation suit would be an action for a money judgment. First, TKM's counsel conceded at oral argument that Daewoo followed the procedural requirements of Section 3502. And TKM does not argue that Daewoo failed to follow any Section 3502 conditions imposed by the district court (for example, by filing its follow-on confirmation proceeding too late). Second, from the outset, Daewoo was clear that it would be pursuing a money award in arbitration and that it needed a pre-confirmation suit attachment to secure any eventual arbitral award because AMT was hemorrhaging assets. That is, Daewoo consistently maintained that it needed an attachment so that it could return to Louisiana and collect on its successful arbitration award.

Accordingly, because Section 3502 allows Daewoo to seek a Section 3542 attachment before commencing its confirmation proceeding, and Daewoo followed Section 3502's requirements, Daewoo's attachment was valid. We therefore VACATE the district court's order dissolving Daewoo's attachment and REMAND for any necessary further proceedings consistent with this opinion.

No. 16-30984

JAMES E. GRAVES, JR., Circuit Judge, specially concurring:

I write separately because I would conclude that the underlying action seeking to compel arbitration here is clearly an "action for a money judgment" under Louisiana's non-resident attachment statute. See La. Code Civ. Proc. art. 3542. As the majority acknowledges, Daewoo has made it clear from the outset that it would be pursuing a money judgment. The "nature, character, or origin of the claim" just happens to be arbitration. La. Code Civ. Proc. art. 3542. Nevertheless, I concur with the conclusion ultimately reached by the majority.