# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #021

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **8th day of May, 2019**, are as follows:

**BY JOHNSON, C.J.**:

2018-CQ-1728    STEMCOR USA INCORPORATED v. CIA SIDERURGICA DO PARA COSIPAR, ET AL.

We accepted the certified question presented to this court by the United States Fifth Circuit Court of Appeals in Stemcor USA Incorporated v. CIA Siderurgica Do Para Cosipar, et al, 740 Fed. Appx. 70 (5th Cir. 2018): "Is a suit seeking to compel arbitration an 'action for a money judgment' under Louisiana's non-resident attachment statute, La. Code Civ. Proc. art. 3542?"
     For the reasons set forth below, we answer the question as follows: Louisiana Code of Civil Procedure article 3542 allows for attachment in aid of arbitration if the origin of the underlying arbitration claim is one pursuing money damages and the arbitral party has satisfied the statutory requirements necessary to obtain a writ of attachment.

GUIDRY, J., dissents and assigns reasons.

GENOVESE, J., dissents for the reasons assigned by Justice Guidry.

**SUPREME COURT OF LOUISIANA**

**NO. 2018-CQ-1728**

**STEMCOR USA INCORPORATED**

**VERSUS**

**CIA SIDERURGICA DO PARA COSIPAR, ET AL.**

**ON CERTIFIED QUESTION FROM THE UNITED STATES
FIFTH CIRCUIT COURT OF APPEALS**

**JOHNSON, Chief Justice**

We accepted the certified question presented to this court by the United States Fifth Circuit Court of Appeals in *Stemcor USA Incorporated v. CIA Siderurgica Do Para Cosipar, et al*, 740 Fed. Appx. 70 (5th Cir. 2018): "Is a suit seeking to compel arbitration an 'action for a money judgment' under Louisiana's non-resident attachment statute, La. Code Civ. Proc. art. 3542?"

For the reasons set forth below, we answer the question as follows: Louisiana Code of Civil Procedure article 3542 allows for attachment in aid of arbitration if the origin of the underlying arbitration claim is one pursuing money damages and the arbitral party has satisfied the statutory requirements necessary to obtain a writ of attachment.

**FACTS AND PROCEDURAL HISTORY**[1]

This case involves a dispute between two creditors, each of which attached the same pig iron owned by the common debtor, America Metals Trading L.L.P. ("AMT"). Daewoo International Corp. ("Daewoo"), a South Korean trading company,

---

[1] We set out the relevant facts primarily as delineated by the United States Fifth Circuit in *Stemcor USA Incorporated v. Cia Siderurgica do Para Cosipar*, 895 F. 3d 375 (5th Cir. 2018).

entered into a series of contracts with AMT in May 2012 for the purchase of pig iron, to be delivered in New Orleans. The sale contracts contained arbitration clauses. Although Daewoo made payments under the contracts, AMT never shipped the pig iron. Daewoo sued AMT in the United States District Court for the Eastern District of Louisiana seeking an order compelling AMT to arbitrate the dispute pursuant to the terms of the contract and also seeking a writ of attachment of AMT's pig iron on board the M/V Clipper Kasashio under the Louisiana non-resident attachment statute, Louisiana Code of Civil Procedure article 3542. The writ was granted and served by the U.S. Marshals Service on December 22, 2012.

Thyssenkrupp Mannex GMBH ("TKM") entered into six contracts with AMT for the purchase of pig iron between June 2010 and February 2011. AMT failed to deliver the pig iron. On December 28, 2012, TKM filed suit for damages in the 24th Judicial District Court for Jefferson Parish, Louisiana, and sought a writ of attachment over the same pig iron that Daewoo attached on December 22, 2012. TKM's state court writ of attachment was served on the cargo on December 29, 2012. TKM then moved to intervene in Daewoo's federal suit. TKM sought a federal writ of attachment over the pig iron, which was granted and served on the cargo on January 11, 2013. On that same day, all parties moved in federal court to sell the pig iron. The funds from the sale of the pig iron were placed in the registry of the court. According to the parties, the funds from the sale of the pig iron are insufficient to satisfy the debt owed to either party.

On May 9, 2016, TKM moved to vacate Daewoo's attachment. As it relates to the issue before this court, TKM argued that the attachment could not stand because La. C.C.P. art. 3542 does not permit attachment in aid of arbitration. The federal district court agreed and vacated Daewoo's writ. *Stemcor USA, Inc. v. Am. Metals*

2

*Trading, LLP*, 199 F.Supp. 3d 1102 (E.D. La. 2016), *vacated in part sub nom.*,

*Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 870 F.3d 370 (5th Cir. 2017),

*opinion withdrawn and superseded on reh'g*, 895 F.3d 375 (5th Cir. 2018). The court

explained that Federal Rule of Civil Procedure 64 permits district courts to borrow

state remedies for the seizure of property to secure a potential judgment, but state law

determines when and how a provisional remedy is obtained. *Stemcor*, 199 F.Supp. 3d

at 1122. Noting that La. C.C.P. art. 3542, Louisiana's non-resident attachment statute,

allows a party to obtain a writ of attachment in "any action for a money judgment,

whether against a resident or a nonresident, regardless of the nature, character, or

origin of the claim, whether it is for a certain or uncertain amount, and whether it is

liquidated or unliquidated," the court stated the issue as "whether Daewoo's suit to

compel arbitration and obtain provisional relief is an 'action for a money judgment'

to which Louisiana's non-resident attachment statute applies." *Id*. at 1132. The court

looked to the definition of "money judgment" in Black's Law Dictionary, which

defines it as "a judgment for damages *subject to immediate execution*, as

distinguished from equitable or injunctive relief." Black's Law Dictionary (10th ed.

2014) (emphasis added by the federal district court). In finding Daewoo's suit to

compel arbitration was not an "action for money judgment" for purposes of

Louisiana's non-resident attachment provision, the district court reasoned:

> Daewoo's complaint does not ask this court for an immediately
> executable damages award. It seeks a provisional attachment and an
> order compelling AMT to arbitrate Daewoo's contract claims in the
> parties' designated tribunal. That Daewoo seeks a provisional
> attachment remedy does not itself render Daewoo's suit a "money
> judgment" action. Otherwise, attachments would be self-justifying;
> through its issuance, every attachment would automatically satisfy
> article 3542, rendering that provision's limiting language superfluous
> and without legal effect.
>
> Nor does Daewoo's request to compel arbitration bring its suit within
> the ambit of article 3542. In ruling on a petition to compel arbitration,

3

a court does not rule on the merits of the underlying claims, much less award damages to the prevailing party. Instead, it conducts only a limited inquiry into whether there is a (sic) agreement to arbitrate the matter that falls under the Convention. In that sense, a petition to compel arbitration resembles a declaratory judgment action, which, according to Black's Law Dictionary, is the antithesis of an action for a "money judgment." Given the disconnect between the attachment statute's language and the nature of Daewoo's suit, it is telling that Daewoo fails to cite a single Louisiana case permitting a party to attach property under the non-resident attachment statute pending arbitration.

*Id.* at 1122–23 (internal citations removed). The federal district court further reasoned that Louisiana's arbitration statutes suggest that pre-arbitration attachments are not available under Louisiana law. *Id.* at 1124. According to the district court, none of the provisions in Louisiana Arbitration Law, La. R.S. 9:4201, *et seq.*, "authorizes or even contemplates attachment of property in connection with arbitration proceedings." *Id.* The court also placed particular importance on its mistaken belief that Louisiana had not enacted legislation based on the Model Law on International Commercial Arbitration relative to attachment in pending arbitration proceedings, stating:

In recent years, a number of states have enacted legislation based on the Model Law on International Commercial Arbitration prepared by the United Nations Commission on International Trade Law ("UNCITRAL"). Consistent with the UNCITRAL Model Law, these states expressly authorize courts to attach property pending arbitration proceedings. **Louisiana has neither adopted the UNCITRAL Model Law's interim relief provisions nor enacted anything resembling the legislative model. That Louisiana has not joined other states in expressly authorizing pre-arbitration attachment suggests that the remedy is foreign to Louisiana law and policy.**

*Id.* (Emphasis added)(Internal citations removed). Contrary to the district court's statement, Louisiana has, in fact, adopted the UNCITRAL Model Law on interim measures in arbitration, which provides, "[i]t is not incompatible with an arbitration agreement for a party to request, before or during arbitral proceedings, from a court an interim measure of protection and for a court to grant the measure." La. R.S. 9:4249 (added by Acts 2006, No. 795, §1).

4

On Daewoo's appeal, the United States Fifth Circuit Court of Appeal initially vacated the district court's order. *Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 870 F.3d 370 (5th Cir. 2017), *opinion withdrawn and superseded on reh'g*, 895 F.3d 375 (5th Cir. 2018). In a split opinion, the Fifth Circuit declined to adopt a categorical approach to the question of whether La. C.C.P. art. 3542 allows for attachment in aid of arbitration, but agreed with the district court that a suit to compel arbitration (like Daewoo's suit) is not directly an action for a money judgment. 870 F.3d at 377. The court reasoned: "A motion to compel arbitration seeks an order requiring a party to take an action–namely, to arbitrate the dispute. Accordingly, a suit seeking to compel arbitration is not an 'action for a money judgment,' and Daewoo's suit seeking to compel arbitration cannot underlie a Louisiana non-resident attachment writ." *Id*. at 378. However, the court ultimately found Daewoo's writ was valid on other grounds unrelated to the issue before this court. Judge Graves concurred, finding the underlying action seeking to compel arbitration is clearly an "action for a money judgment" under La. C.C.P. art. 3542. Judge Graves reasoned that Daewoo has made it clear from the outset that it would be pursuing a money judgment, and the "nature, character, or origin of the claim" just happened to be arbitration. *Id*. at 380.

On panel rehearing, the Fifth Circuit withdrew its prior opinion and affirmed the district court in a split opinion, thereby vacating Daewoo's attachment. *Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 895 F.3d 375 (5th Cir. 2018). As it relates to the issue before this court, the Fifth Circuit again agreed with the district court that a suit to compel arbitration is not directly an action for a money judgment under Article 3542. *Id*. at 383. The Fifth Circuit reversed its previous ruling that the attachment was valid on other grounds. Judge Graves dissented, once more finding

5

the underlying action seeking to compel arbitration was clearly an "action for a money judgment" under La. C.C.P. art. 3542. *Id*. at 385.

The parties filed separate rehearing petitions. In response, the Fifth Circuit opted to exercise the certification privilege:

> In *Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 870 F.3d 370, 372 (5th Cir. 2017), *opinion withdrawn and superseded on reh'g*, 895 F.3d 375 (5th Cir. 2018), we interpreted, *inter alia*, a matter of Louisiana law: whether the state non-resident attachment statute, La. Code Civ. Proc. art. 3542, allows for attachment in a suit to compel arbitration. A divided panel concluded that it does not, after reading the phrase "action for a money judgment" to exclude such a suit.
>
> This narrow issue of state statutory interpretation has divided judges on our court. While we regret the time that has passed, the parties' separate rehearing petitions have convinced us that the precise meaning of the phrase "action for a money judgment" under Louisiana's non-resident attachment statute carries significant consequences for state and federal commercial law. We believe re-examination is needed. Because we conclude that Louisiana's Supreme Court is the appropriate authority to resolve the matter, we exercise the certification privilege granted by Rule XII of the Rules of the Supreme Court of Louisiana.

*Stemcor USA Incorporated v. CIA Siderurgica do Para Cosipar*, 740 Fed. Appx. 70, 70–71 (2018).

## DISCUSSION

We have been tasked with answering a certified question addressing the proper interpretation of Louisiana Code of Civil Procedure article 3542. This court has summarized the rules of statutory interpretation as follows:

> The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the search for the legislative intent. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law.
>
> The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its

application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.

*Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10–0193 (La. 1/19/11), 56 So. 3d 181, 187–88 (citing *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07–2371 (La. 7/1/08), 998 So. 2d 16, 27 (internal citations omitted)). With these principles in mind, we examine the language of the statute.

Article 3542 provides: "A writ of attachment may be obtained *in any action for a money judgment*, whether against a resident or a nonresident, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain amount, and whether it is liquidated or unliquidated." (Emphasis added). At issue is the proper interpretation of the phrase "in any action for a money judgment" as used in the statute. TKM suggests that Daewoo's suit to compel arbitration is not an "action for a money judgment" under the statute because the suit does not seek a judgment ordering the defendant to pay an amount of money; rather it seeks an order commanding defendant to proceed to arbitration. Additionally, TKM urges that an arbitration is not an "action" within the meaning of the Louisiana Code of Civil Procedure because "action" in the Code of Civil Procedure refers solely and exclusively to a matter before a court. By contrast, Daewoo asserts the statute allows attachment "in aid of" a monetary arbitration—i.e., to secure the satisfaction of a future arbitration award for money damages. Thus, where the arbitration is seeking an award for money damages, which will be confirmed and become a money judgment, the arbitration and related enforcement proceeding is an "action for a money judgment" under the statute.

Given the conflicting views of the parties, the split opinions of the federal courts, and the eventual admitted uncertainty of the federal appeals court regarding the precise meaning of this language, it is apparent to us that the phrase "in any action for a money judgment" is not clear and unambiguous. Thus, we apply the secondary principles of statutory interpretation by looking to the purpose of the statute, the context of the language within the statute, and the text of the law as a whole. *See Red Stick Studio*, 56 So. 3d at 187–88. Adhering to these principles, we find the language "in any action for a money judgment" is broad enough to encompass a creditor's suit to compel arbitration where the ultimate goal of the action is to obtain a money judgment against the debtor. A broad interpretation of the language comports with the purpose of the statute and the text of the statute as a whole.

Our courts have generally defined "money judgment" as a judgment which orders the payment of a sum of money. *See*, *e.g.*, *Eikert v. Beebe*, 188 So. 2d 1129 (La. App. 2 Cir. 2/24/16); *Succession of Moody*, 306 So. 2d 869 (La. App. 1st Cir. 1974), *writ denied*, 310 So. 2d 639 (La. 1975); *see also* La. C.C.P. art. 1922. Although Daewoo's suit to compel arbitration does not directly seek the payment of a sum of money, at its core the suit against AMT seeks to recover money damages. Daewoo alleged in its complaint that it paid AMT $14,479,638.87 in accordance with their contract, yet AMT failed to deliver the pig iron. Daewoo further asserted the parties agreed to submit all disputes arising out of the contract to arbitration, and Daewoo specifically sought an order of attachment to secure its anticipated arbitration award up to the amount of $15,496,493.60, representing its total breach of contract damages. Thus, the objective of Daewoo's suit is the same as that of the competing creditor, TKM–the recovery of money damages from AMT for breach of contract. Daewoo detailed its breach of contract claim in the suit, and set forth the precise

8

amount of money damages it was seeking. Because Daewoo's contract with AMT contained an arbitration clause, the required procedure to secure a money judgment is different than that pursued by TKM, but there is no meaningful difference in the substance of their claims. The suit to compel arbitration is simply the required first step in order for Daewoo to recover those damages. An arbitral party seeking money damages can obtain an award for money damages, have that award confirmed in a court, and thereby obtain a money judgment that is docketed as if it were rendered in a court action. La. R.S. 9:4214. "The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action, and it may be enforced as if it had been rendered in an action in the court in which it is entered." *Id*. Thus, in considering whether an "action for a *money judgment*" exists for purposes of Article 3542, we find the necessary factor is that the origin of the claim be one of indebtedness. The fact that an arbitral party must engage in a different progression of steps and process to pursue that claim of indebtedness and obtain a money judgment does not bar application of Article 3542.

We also decline to limit "action" as used in Article 3542 to the characterization of "civil action" set forth in Code of Civil Procedure article 421. Article 421 provides, in relevant part: "A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction." Although a civil judicial proceeding is certainly an "action," we do not find it to be exclusive in the context of Article 3542. An arbitration proceeding is also a demand for the enforcement of a legal right, despite the fact it is not commenced in a court. *See Associated Builders Corp. v. Ratcliff Const. Co., Inc*., 823 F.2d 904, 906 (5th Cir. 1987). To apply a restrictive literal meaning to the word "action" in Article 3542 to limit the attachment remedy to civil judicial proceedings when civil suits and

9

arbitration proceedings both seek to enforce a legal right would completely disregard the purpose of the attachment remedy embodied in that statute.

The writ of attachment is a provisional remedy designed to preserve property and maintain the status quo until judgment can be obtained. *See* Frank L. Maraist, *1A Louisiana Civil Law Treatise, Civil Procedure—Special Proceedings*, § 2.1 (2d ed.) (updated July 2018). Black's Law Dictionary defines "provisional attachment" as "a prejudgment attachment in which the debtor's property is seized so that if the creditor ultimately prevails, the creditor will be assured of recovering on the judgment through the sale of the seized property." Black's Law Dictionary (10th ed. 2014). This court has explained that "attachment is based upon some act, or anticipated act, of the debtor which would place the creditor at a disadvantage in the suit and which prompts the law to protect the creditor by permitting him to seize the debtor's property pending the suit, even though the creditor has no claim against the thing seized." *W. T. Grant Co. v. Mitchell*, 269 So. 2d 186, 190 (1972), *aff'd*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed. 2d 406 (1974). Attachment supplies a prejudgment security measure to insure the sanctity of the court's judgment where a defendant could effectually nullify the value of the judgment if his control over the property were not curtailed during the pendency of the action. James D. Johnson, *Attachment and Sequestration: Provisional Remedies under the Louisiana Code of Civil Procedure*, 38 Tul. L. Rev. 1, 3 (1963).

Unquestionably, the ultimate goal of the attachment remedy is to protect a creditor by enabling satisfaction of an eventual judgment through preservation of the debtor's property. The necessity of such relief is equally applicable in arbitral claims. Thus, to read the statutory language of Article 3542 in a way to exclude arbitral parties from seeking attachment in aid of arbitration would produce a result

demonstrably at odds with the clear intent of the statute. "Courts should not adopt a hypertechnical construction of a statute to deny benefits when a reasonable interpretation can be adopted which will not do violence to the plain words of the statute and which will carry out the legislative intent." *Guste ex rel. Courville v. Burris*, 427 So. 2d 1178, 1182 (La. 1983). Additionally, this court has long held that "harsh or unjust construction should be avoided, and, if possible, a statute should be construed so as to apply equally to all similarly situated." *Id.*; *Gremillion v. Louisiana Public Service Commission*, 172 So. 163, 165 (La. 1937). The only distinction here between the two creditors is the sequence of pursuing relief, not the substance of the relief sought. Daewoo did not give up its rights against AMT, but simply agreed to submit its claim to an arbitral forum rather than a judicial forum. We find there is no logical or rational basis to prohibit an arbitral party from pursuing the provisional remedy available under Article 3542 to aid in arbitration.

This interpretation of Article 3542 is all the more reasonable when considering it in conjunction with La. R.S. 9:4249: "It is not incompatible with an arbitration agreement for a party to request, before or during arbitral proceedings, from a court an interim measure of protection and for a court to grant the measure." This statute was enacted as part of Louisiana's "International Commercial Arbitration Act," La. R.S. 9:4241 *et seq.*, and replicates Article 9 of the UNCITRAL Model Law on International Commercial Arbitration.[2] Louisiana is one of only eight states in our country which has adopted legislation based on the Model Law.[3] Although La. R.S. 9:4249 does not itself establish specific interim remedies, it reflects Louisiana's policy that existing provisional relief under Louisiana law is equally applicable in

[2] https://www.uncitral.org/pdf/english/texts/arbitration/ml-arb/07-86998_Ebook.pdf (last visited April 23, 2019).

[3] *See* https://uncitral.un.org/en/texts/arbitration/modellaw/commercial_arbitration/status (last visited April 23, 2019).

arbitration cases. Attachment under Article 3542 is one such interim measure of protection already existing under Louisiana law. Explanatory Note 22 by the UNCITRAL secretariat explains:

> **Article 9 expresses the principle that any interim measures of protection that may be obtained from courts under their procedural law (for example, pre-award attachments) are compatible with an arbitration agreement.** That provision is ultimately addressed to the courts of any State, insofar as it establishes the compatibility between interim measures possibly issued by any court and an arbitration agreement, irrespective of the place of arbitration. Wherever a request for interim measures may be made to a court, it may not be relied upon, under the Model Law, as a waiver or an objection against the existence or effect of the arbitration agreement.

(Emphasis added).[4] It would have been illogical for our legislature to adopt La. R.S. 9:4249 without enacting correlating laws providing for particular provisional remedies in arbitration cases, unless the legislature recognized existing provisional remedies and intended them to apply equally to arbitration actions. La. R.S. 9:4249 is consistent with Louisiana's policy of fostering a legal climate conducive to international arbitration. To exclude a creditor from seeking the protection of Article 3542 simply because its contract with the debtor mandated arbitration of the dispute would undermine our state's policy favoring arbitration agreements. *See Aguillard v. Auction Management Corp.*, 04–2804 (La. 6/29/05), 908 So. 2d 1, 7 ("At the outset, we note the positive law of Louisiana favors arbitration.")

Finally, we point out the history of the attachment remedy in Louisiana generally reflects legislative expansion over time. Before 1920, a plaintiff could not attach the property of a defendant when the cause of action was ex delicto. *See Normann v. Burnham's Van Service*, 73 So. 2d 640, 644 (La. App. 4th Cir. 1954). The attachment remedy was expanded by Act 215 of 1920 to include the right to attach

---

[4] www.uncitral.org/pdf/english/texts/arbitration/ml-arb/MLARB-explanatoryNote20-9-07.pdf (last visited April 23, 2019).

when the ground was the non-residence of the defendant in all cases in which the demand arose from an offense, quasi-offense, or tort:

> Section 1. Be it enacted by the General Assembly of the State of Louisiana, That in all suits instituted in any of the courts of this State, **in which the demand is for damages arising from an offense, quasi-offense, or tort and where the defendant**, whether an individual, partnership (commercial or ordinary) or a corporation, **is a non-resident of this State**, or not domiciled therein, or, in the case of a corporation, not incorporated, under the laws thereof, the plaintiff shall have the right to sue out a writ of attachment against the property of the defendant, upon making affidavit and giving bond, as now required by law, in suits against non-resident defendants for other causes of action, provided that the provisions of this act shall not apply in cases where the individual, partnership (commercial or ordinary) or corporation has appointed an agent in the State of Louisiana upon whom service or process may be made. (Emphasis added).

*See also Normann*, 73 So. 2d at 644. The legislature further broadened the right of attachment when it passed Act 220 of 1932, which provided:

> Section 1. Be it enacted by the Legislature of Louisiana, That in all suits instituted in any of the courts of this State in which the demand is for a money judgment and the defendant is a non-resident of this State, or when the defendant is not domiciled in this State, **whatever may be the nature, character or origin of the plaintiff's claim**, the plaintiff shall have the right to sue out a writ of attachment against the defendant's property, **whether the claim be for a sum certain or for an uncertain amount, and whether the claim be liquidated or unliquidated**, upon making affidavit and giving bond as now required by law in suits against non-resident defendants, provided that the provisions of this Act shall not apply in cases in which the defendant has a duly appointed agent in the State of Louisiana upon whom service of process may be made. (Emphasis added).

The enactment of Act 220 of 1932 enlarged the right to attach "so as to embrace every description of legal demand for money, whether the demand arises ex contractu or quasi ex contractu or from a tort." *Jackson State Nat. Bank of Jackson, Miss. v. Merchants' Bank*, 149 So. 539, 541; *see also* Johnson, *supra* at 10. Act 220 also permitted writs of attachment to be issued for an unliquidated claim for damages. *See Roper v. Brooks*, 201 La. 135, 150, 9 So. 2d 485, 490–91 (La. 1942).

Act 220 of 1932 was the source of La. R.S. 13:3952, enacted in 1950, which

essentially replicated and retained the provisions of Act 220:

> In all suits in which the demand is for a money judgment and the defendant is a non-resident of this state, or when the defendant is not domiciled in this state, whatever may be the nature, character or origin of the plaintiff's claim, the plaintiff may sue out a writ of attachment against the defendant's property, whether the claim be for a sum certain or for an uncertain amount, and whether the claim be liquidated or unliquidated, upon making affidavit and giving bond as now required by law in suits against nonresident defendants, provided that the provisions of this Section shall not apply in cases in which the defendant has a duly appointed agent in the state upon whom service of process may be made.

La. R.S. 13:3952 (1950). Finally, with the enactment of La. C.C.P. art. 3542 in 1960, the legislature expanded application of the attachment remedy by confirming that attachment is available in any action for money judgment, no matter what may be the basis for the writ, and removing the limitation that the defendant be a non-resident: "A writ of attachment may be obtained **in any action for a money judgment**, **whether against a resident or a nonresident**, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain amount, and whether it is liquidated or unliquidated. La. C.C.P. art. 3542, Official Revision Comments (b) and (c) (1960). The legislature clearly intended to give Article 3542 as broad an application as possible. *See* Howard W. L'Enfant, Jr., *Work of Appellate Courts—1970–1971*, 32 La. L. Rev. 318, 327.

Additionally, we find it significant that earlier language providing for attachment "***in all suits instituted in any of the courts of this state*** in which the demand is for a money judgment…" was eliminated with the enactment of Article 3542. The statutory language was changed to provide for attachment "***in any action*** for a money judgment…." La. C.C.P. art. 3542. Because Article 3452 is worded differently than previous law regarding attachment, we must assume the legislature intended a change in the law. *See* La. R.S. 24:177(C) ("The legislature is presumed to have enacted an article or statute in light of the preceding law involving the same

subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law."). We view the intentional change in language from "suits instituted in any courts of this state" to "any action" as indicative of the legislature's continued broadening of the scope of the attachment remedy. The statutory language of La. C.C.P. art. 3542 no longer specifically limits attachments to suits instituted in a Louisiana court and we find that statutory language sufficiently broad to include an arbitration claim for money damages.

## CONCLUSION

For the above reasons, we find that Louisiana Code of Civil Procedure article 3542 allows for attachment in aid of arbitration if the origin of the underlying arbitration claim is one pursuing money damages and the arbitral party has satisfied the statutory requirements necessary to obtain a writ of attachment.

## DECREE

We answer the certified question as set forth in this opinion. Pursuant to Rule XII, Supreme Court of Louisiana, the judgment rendered by this Court upon the question certified shall be sent by the Clerk of this Court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

**CERTIFIED QUESTION ANSWERED**.

15

SUPREME COURT OF LOUISIANA

No. 2018-CQ-1728

STEMCOR USA INCORPORATED

VERSUS

CIA SIDERURGICA DO PARA COSIPAR, ET AL.

ON CERTIFIED QUESTION FOR THE UNITED STATES
FIFTH CIRCUIT COURT OF APPEALS


**GUIDRY, J., dissents and assigns reasons.**

I respectfully dissent. I disagree with the majority's characterization of the language in La. Code Civ. Proc. art. 3542 as "not clear and unambiguous" and its decision to invoke secondary principles of statutory interpretation to find a legislative intent that contradicts the plain language of the statute.

The starting point for interpretation of any statute is the language of the statute itself. *Central Properties v. Fairway Gardenhomes, LLC*, 2016-1855, p. 10 (La. 6/27/17), 225 So.3d 441, 448. The text of a law is the best evidence of legislative intent. La. Rev. Stat. 24:177(B)(1). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of legislative intent. La. Civ. Code art. 9; La. Rev. Stat. 1:4. Here, the language of Article 3542 is clear: "A writ of attachment may be obtained in any action for a money judgment…." Conversely, attachment is *not* contemplated in an action that is *not* an action for a money judgment.

The majority agrees that Daewoo's action to compel arbitration "does not directly seek the payment of a sum of money," which is why it must invoke

secondary principles of statutory interpretation to reach the conclusion it reaches today. But if the application of the clear terms of Article 3542 is contrary to the legislative intent, it is the responsibility of the legislature to clarify that intent; it is not for this court to "'rewrite the law to effect a purpose that is not otherwise expressed.'" *Foti v. Holliday*, 2009-0093, p. 12 (La. 10/30/09), 27 So.3d 813, 821 (quoting *Naquin v. Titan Indem. Co.*, 2000-1585, p. 9 (La. 2/21/01), 779 So.2d 704, 710)).

Because I find the language of Article 3542 to be clear and unambiguous, I would answer the question posed by the United States Fifth Circuit Court of Appeals as follows: La. Code Civ. Proc. art. 3542 does not permit attachment in an action that is not an action for a money judgment, such as an action to compel arbitration.

**05/18/19**

**SUPREME COURT OF LOUISIANA**

**No. 2018-CQ-1728**

**STEMCOR USA INCORPORATED**

**VERSUS**

**CIA SIDERURGICA DO PARA
COSIPAR, ET AL.**

**ON CERTIFIED QUESTION FROM THE UNITED STATES FIFTH
CIRCUIT COURT OF APPEALS**

**GENOVESE, J.,** dissents for the reasons assigned by Justice Guidry.